## GUSTAVUS GRAHAM ET AL. V. JOHN P. STEIN.

1. **CONVICTION OF CRIME NOT NECESSARY TO REMOVAL FROM OFFICE.**

   It is not necessary in the removal of a prosecuting attorney for official misconduct, that he should at first or at any time be indicted, tried and convicted criminally of the offense charged against him.

2. **COMPLAINT OF OFFICIAL MISCONDUCT NEED NOT BE VERIFIED.**

   A complaint under sec. 1272, Rev. Stat., relating to neglect of duty or misconduct in office of prosecuting attorneys, need not be verified by oath.

3. **MISCONDUCT WHILE IN OFFICE NOT GROUND FOR REMOVAL.**

   To warrant removal under said section there must be official misconduct; mere misconduct while in office is not sufficient.

4. **PROSECUTING ATTORNEY MUST DEPOSIT COUNTY FUNDS AT ONCE.**

   It is the duty of the prosecuting attorney who, being employed by the county commissioners, collects funds belonging to the county, to deposit the same in the county treasury at once. He is presumed to know the specific direction of the statute in this regard and a failure to comply with it is official misconduct. The fact that another attorney might have been employed to make the collection does not relieve the prosecuting attorney from official responsibility.

5. **INABILITY TO ADVISE COUNTY OFFICERS—CONTRACT WITH THIRD PERSON.**

   The prosecuting attorney is the legal adviser of the county officers and in placing himself in a position to be obliged to either refuse to give such advice or give it hampered by a contract with a third person, adverse to the interests of the county, is official misconduct.

6. **PROSECUTING ATTORNEY AS TAX INQUISITOR.**

   An agreement with a tax-payer by a prosecuting attorney who is also acting, under contract with the county commissioners, as tax inquisitor, that he will not investigate such tax-payer, as to his taxes prior to a certain date, where the time referred to in the agreement is within the time specified by the statute for investigation constitutes official misconduct.

7. **EVIDENCE IN PROCEEDING TO REMOVE PUBLIC PROSECUTOR.**

   In a proceeding to remove a person acting as prosecuting attorney the matters to which evidence is to be addressed on the trial are the issues in the case and not whether there is any complaint at all, by proper persons, unless that issue is actually raised by the prosecuting attorney or is presented by the record on its face.

PETITION in Error.

BENTLEY, J. (orally.)

This is a petition in error presented by John P. Stein, the prosecuting attorney of this county, to reverse the order and judgment of the court of common pleas of this county removing him from office.

It is an unusual case and we have given it careful and considerate thought. And it would be our pleasure no less than our duty to reverse the judgment if we should find upon applying the rules governing the action of reviewing courts, that the charges are insufficient in form or substance or are not sustained by sufficient evidence, or that the manifest weight and effect of the evidence is opposed to the conclusions of the court. It is recognized that a single charge properly made and properly sustained by the evidence would warrant the final judgment of removal, and to reverse the judgment it would be necessary to find that there is no proper charge at all, or if there was such a one, that it is not sufficiently sustained by evidence.

We suppose we may dismiss from consideration all the specifications of the complaint, as to any action of the court therein, except the 1st, 3d, 9th and 11th specifications, since all the others are by the final judgment dismissed.

The complaint, omitting the specifications which were finally dismissed (except the 10th, to which the 11th refers) reads as follows:

"To the court of common pleas of Erie county, Ohio: The undersigned residents, citizens and tax-payers of the county of Erie, come and complain to the said court of one John P. Stein, prosecuting attorney in and for said county of Erie and state of Ohio, and do charge the said John P. Stein with gross misconduct in office, and as specifications thereof, state the following:

### "SPECIFICATION NUMBER ONE.

"That the said John P. Stein while holding said office on or about the 27th day of January, 1892, did engage his services as attorney at law and as prosecuting attorney to and with L. L. Stoddard, Mary A. Lockwood and R. M. Lockwood, executors of the estate of J. C. Lockwood, to influence and procure the auditor of said county to erase or take from the tax list and duplicate of said county a sum of $11,000 or more of taxes that had been added to said duplicate by the said auditor as omitted taxes upon property belonging to the estate of J. C. Lockwood, deceased, and did influence and procure the auditor to to take and erase the said amount from the said tax duplicate and said John P. Stein did for his services in that respect charge and demand, collect and receive of the executors of said estate the sum of $100, and the sum so erased and taken from said tax duplicate was all that had been added as omitted taxes, save and except the sum of $408.45 and having secured this property to be taken from the tax duplicate, in violation of his duties as prosecuting attorney, and having received said fee of $100 for performing said services, in violation of his duties, as prosecuting attorney, he, within six days thereafter, or by February 2, 1892, secured the appointment as tax inquisitor and entered into a contract with the commissioners, auditor and treasurer of said county, under the statute in that case made and provided, and on or about June 18, 1893, made his bill for the sum of $40.84, being 10 per cent. commission for collecting the said sum of $408.45, and presented the same to the commissioners and secured their allowance of the same as and for commission that was due him as such tax inquisitor under his said contract, which contract provides that he is to have 10 per cent. upon the amount of taxes collected.

### "SPECIFICATION NUMBER 3.

"In this, that the said John P. Stein presented to the county commissioners his bill, on or about the 3d day of May, 1892, and received an order therefor, and drew from the county treasury at the above named date, the sum of $144.15. And on or about the 29th day of July, 1892, made out his bill, and presented it to the county commissioners, which was allowed, and drew from the county treasury on that day, $368.28, the two said items being as he alleged, a 10 per cent. commission as tax inquisitor under his contract for putting upon the tax duplicate property upon which taxes were collected to the amount of $4,124.11 which had been omitted by the Lake Shore & Michigan Southern Railway Co., whereas the said property had not been omitted by the said Lake Shore & Michigan Southern Railway Co., whereas the property of the Lake Shore & Michigan Southern Railway Co., is appraised and put upon the duplicate by a committee of auditors of the several counties through which the said railroad passes, and in placing the property of the said Lake Shore & Michigan Southern Railway Co. upon the tax duplicate of Erie county, an error was made by the auditor of said county himself, in making the proper distribution of the tax among the different funds, so far as the village of Huron in said county was concerned. And the said error was not an omitted tax at all, and the said county did not owe the said John P. Stein the said 10 per cent., or $412.41, nor any part thereof.

### "SPECIFICATION NUMBER 9.

"In this, that on or about the —— day of May, 1893, he collected as prosecuting attorney of said county from one N. F. Goosman the sum of $64.73, claiming that the same was due to the county of Erie for clothing furnished the wife of the said Goosman, who was an inmate of a state institution, and which sum of $64.73 was collected by the said John P. Stein, as aforesaid, which the said John P. Stein appropriated and converted to his own use and did not account therefor."

Specification number 10, though dismissed itself, it is necessary to consider in or to consider number 11, which alludes to it.

### "SPECIFICATION NUMBER 10.

"In this, that on or about the —— day of April, 1892, the said John P. Stein pretending to be a tax inquisitor, under and by virtue of a contract herein before referred to, made a claim against one Samuel Devlin, a citizen of Erie county, that he, the said Devlin had omitted to return all of his property for taxation during the years prior to April 1, 1892, and the said Samuel Devlin paid to the said John P. Stein as such tax inquisitor and prosecuting attorney as aforesaid, received the sum of $20 from the said Samuel Devlin for the purpose and upon the agreement between them that the said John P. Stein should not investigate the said Samuel Devlin, nor inquire whether he had omitted to return his property for taxation, for some or all of the time prior to the 1st day of April, 1892, and should make no claim against the said Samuel Devlin for said omitted property or taxes therefor.

### "SPECIFICATION NUMBER 11.

"In this, that on or about the 27th day April, 1892, the said John P. Stein, then prosecuting attorney of Erie county, Ohio, and also then having the said contract as aforesaid, made a still further contract with the said Samuel Devlin hereinbefore referred to, he, the said John P. Stein, having learned that his proceedings and his agreement stated in specification number 10 had been public, or known to those other than the parties thereto, made another contract with the said Samuel Devlin, to-wit: That the said Samuel Devlin having paid him the sum hereinbefore mentioned by a check, which check had not been presented and collected by the said John P. Stein, he, the said John P. Stein, agreed to and did surrender to the said Devlin the said check aforesaid and he, the said Samuel Devlin, did agree to and with the said John P. Stein that he would destroy the said check aforesaid, and also destroy the receipt which the said John P. Stein had given to the said Samuel Devlin on the day of the date o f the said check; and the said John P. Stein did then and there also agree to and with the s aid Samuel Devlin, that in consideration that the said Samuel Devlin should destroy the said check so returned to him, and the said receipt which he had so received from the said John P. Stein, he, the said John P. Stein, would not investigate the said Samuel Devlin as to the property of his which he had omitted to return for taxation, prior to the first day of April, 1892, although the contract under which he had been engaged as such tax inquisitor, and the statutes under which he acted, authorized and required of him to investigate for a period of five years next preceding the year in which such investigation was made.

"The undersigned therefore ask that the conduct of the said John P. Stein be investigated, and such order or judgment be rendered as the facts in the case will warrant."

It is signed with the names of eight persons. It was filed in the court of common pleas, April 7, 1894, and it was under this complaint thus filed that the proceedings were had which resulted in the judgment now asked to be reversed.

A primal objection to this complaint which has been urged with spirit and force by counsel for the plaintiff in error, is that it is not verified by oath. The statute under which this proceeding was instituted is sec. 1272 and reads as follows:

" On complaint in writing, signed by one or more taxpayers, filed in the court of common pleas, containing distinct charges and specifications of wanton and willful neglect of duty, or gross misconduct in office, by the prosecuting attorney, the court shall set down the complaint for hearing and cause reasonable notice thereof to be given to the prosecuting attorney of the time so fixed by the court for the hearing; and at the time so fixed, or at such time as the court adjourns the hearing to, the court shall hear the evidence adduced by the complainants and the prosecuting attorney; and if it appears that the prosecuting attorney has willfully and wantonly neglected to perform his duties, or has been guilty of gross misconduct in office, the court shall remove him from office and declare the office vacant; but otherwise the complaint shall be dismissed; and the court shall render judgment against the losing party for costs."

Graham et al. v. Stein.

The statute does not specify that the complaint shall be sworn to and we do not think it should be so constructed as to require it. It does not provide for a criminal prosecution and it can well be assumed that as the complaint is to be made by taxpayers, and if not sustained the complainants are liable for costs, the legislature did not deem it necessary to provide the further sanction of an oath. The filing of the complaint is not to be followed by an arrest or any interference with the liberty or property of the prosecuting attorney prior to a full hearing and judgment, so that the reasons which have impelled the Supreme Court to hold that criminal prosecutions should rest upon some initial oath, do not bear in such a case as this.

It is also argued that, as there is no evidence upon the trial that the complainants were taxpayers, the court was without jurisdiction to enter the judgment of removal. The matters to which evidence is to be addressed on the trial are the *issues* in the case. The issues of fact to be tried on the hearing arise from the assumed denials of the truth of the charges as made, and the issues of law are as to the sufficiency of the charges in form and substance, and not whether there is any complaint at all, by proper persons, unless that issue is actually raised by the prosecuting attorney or is presented by the record on its face. The prosecuting atttorney presented no such plea by the filing of any motion or otherwise, and offered no proof to overthrow the presumption of jurisdiction afforded by the face of the proceedings.

Furthermore, sec. 1272 provides for a notice to the prosecuting attorney only when there is filed "a complaint in writing signed by one or more taxpayers." By the filing of such complaint jurisdiction to proceed is given, and the certified transcript of the journal entry in this case shows this, under date of April 7, 1894.

"This day came G. A. Graham and others, citizens of said county, and taxpayers therein, and filed a complaint in writing in this court against John P. Stein, prosecuting attorney, and it is thereupon ordered that said complaint be set down for hearing on Monday, April 23, 1894, at 9 o'clock A. M., and the clerk is ordered to make a copy of said complaint with this entry and serve on said John P. Stein at least ten days before said April 23, 1894."

We must presume from this recitation of the action of the court that it had sufficient evidence of its own jurisdiction to order the notice and to set the case down for hearing as it did. And this presumption is sufficient till it is made affirmatively to appear that it is not, or was not, well founded. We must, therefore hold adversely to the plaintiff in error on this claim.

As to the sufficiency of the four specifications upon which the final judgment is based, it is claimed that all except the 9th, is based upon alleged misconduct of the plaintiff in error, not in his office of prosecuting attorney, but in his office or character as tax inquisitor. Certainly to warrant removal under this section there must be "misconduct in office," that is to say, official misconduct and mere misconduct while in office would not be sufficient. The misconduct must be as regards matters as to which the incumbent of the office owed a duty as such officer, and a violation of propriety as to any matter regarding his tax inquisitorship would not be ground for his removal from the office of prosecuting attorney unless it was a matter that also involved his conduct as prosecuting attorney.

So the question is presented whether number 1 of these four charges did involve his conduct as prosecuting attorney. It is not my purpose to discuss them at any great length, or to cite authorities, but simply to briefly indicate our views regarding it.

The first specification we may say generally regards the Lockwood case. This is, in January and before Mr. Stein was appointed tax inquisitor and while he was prosecuting attorney, he made an agreement upon a consideration with the representatives of the Lockwood estate touching some property assessed for taxation upon the tax duplicate, or at least upon a book called the Book of Addi-

tions, which for the purpose of taxation is regarded as part of the duplicate. There was a large amount of property placed there, and as the Lockwood representatives claimed improperly and illegally. It had been placed there by the auditor and it would appear that the action had been taken possibly upon consideration of certain evidence produced to the auditor by one Cole, who represented Morganthaler Brothers, who at that time had a contract with the county as tax inquisitors. In general terms the substance of the agreement was that, although he was then prosecuting attorney, Mr. Stein, under these circumstances, would endeavor to induce the auditor to take from the tax duplicate this property so assessed against the Lockwood estate. He agreed he would do that for $100. They agreed to pay the $100 and when the action was accomplished they did pay him the $100.

Now the question is presented whether the court of common pleas under such circumstances as that had any authority to find that that action constituted gross misconduct in office as prosecuting attorney. I need not recite and will not recite the elaborate opinion of the court of common pleas treating of this matter, but will simply, and briefly and in a very general way call attention to the situation as it would strike any lawyer.

We must judge of the claim made in behalf of the prosecuting attorney in this regard in view of the various statutes that bear upon his duties, because misconduct must be that he failed to comply with some duty which rested upon him, as prosecuting attorney. The general nature of his duties is provided in section 1274, although a great many other sections also prescribe certain duties that he is to perform. Sec. 1274 is brief and reads as follows:

"The prosecuting attorney shall be the legal adviser of the county commissioners and other county officers, and any of them may require of him written opinions or instructions in any matters connected with their official duties; and for these services the county commissioners shall, annually, at their December session, make him such allowance as they think proper; but this section shall not apply to any county having a county solicitor."

This is not one of the counties where by law a county solicitor may be appointed. It has no county solicitor and cannot have. This section then, plainly and unequivocably makes the prosecuting attorney, as such, the attorney or legal adviser of all the county officers including the commissioners, who have general control of the county officers, and the county auditor. Certainly the county auditor is one of the county officers meant and intended by this section. The county auditor then in the discharge of his duties had the right at any time not only to consult the prosecuting attorney, as such, orally, but to require a written opinion upon any matter touching the auditor's duties.

Now here is a grave matter presented to the auditor's consideration. Here is a large amount of taxes which stand upon the duplicate or in process of collection, and the question is whether they shall be stricken from the books of the county so that there will be no authority of the treasurer to collect them. It is claimed that it was certain that this ought to be done, that really there was not very much question about it in fact, and that the representatives of the Lockwood estate were correct in their claim. However that may be whether they were correct or not, the county auditor had a decision to make whether or not he would comply with that request.

There is a question made whether he would have the right in any way by any person's advice himself to strike from the duplicate or this book of additions any property whatever. However that may be, an occasion was presented that required a decision at his hands whether he would so act or not. Now in behalf of the prosecuting attorney it is claimed that inasmuch as by a contract with the commissioners there had been a tax inquisitor appointed, he had become as to those special tax matters the legal adviser of the county auditor, and that the prosecuting attorney was relieved from any liability or duty regarding that matter, and that therefore he was perfectly free to take a retainer as to that particular matter against the county auditor.

It would be seen that the prosecuting attorney having taken this retainer, if he complied with the contract that he had made with his client, was in no fit condition whatever to act as the legal adviser of the county auditor. Under such circumstances it would be but the veriest farce, of course, for the auditor to seek the advice of the prosecuting attorney, already under a contract for $100 to persuade the auditor to do a certain thing. And so the question narrows down as to this particular matter, whether or not, as a legal proposition upon the facts as they were claimed and stated and proved, the prosecuting attorney's claim that the law had itself provided a legal adviser for the county auditor and relieved the prosecuting attorney of any duty to give him any advice in this matter is right. I will not take the time to read the section which provides for the appointment of these tax inquisitors, but it will be seen upon reading it that it does not provide that the person so appointed shall be an attorney at all, or have any knowledge of the law, or be in any wise fitted for the legal adviser of any body. It may be a business man, it may be any person with whom the county commissioners and the other county officers see fit to contract. So that as the law does not provide that he must necessarily be an attorney who is appointed tax inquisitor, the mere incident, the mere accident, so to speak, that in any particular case a lawyer has been appointed, does not throw any light upon the resolution of this question.

It is said, and we happen to personally know, that Mr. Cole was in fact a lawyer. He was the agent of Morganthaler, and I do not know but there is some suggestion that Morganthaler himself is a lawyer, but however that may be as to either of these persons, if either of them was a lawyer it was a mere accident. But now supposing the law even required that the tax inquisitor to be appointed should be a lawyer, what were his duties under the statute? Did he become the legal adivser of the county auditor? Not at all Such a duty was not imposed upon him neither by the provisions of the law nor by the provisions of the contracts that are generally made in cases of this kind. He is a mere assistant of the auditor to hunt up testimony, to present evidence to the auditor upon which the auditor is to act or refuse to act. It is, after all, the auditor who is to act upon the evidence presented by the tax inquisitor or the information that he may acquire in any other way. He is the final arbiter and actor in the matter. When the tax inquisitor has done all that the law requires or allows him to do, or that his contract requires him to do, he has simply presented to the auditor the necessity of making a decision as to what he shall do in the particular matter presented. So that in the ordinary course of matters if the tax inquisitor has zeal and activity, as he is apt to have, not only is the prosecuting attorney not relieved from the liability to advise the auditor, but the occasions where his advice would be needed are indefinitely multiplied and made even more important than ordinarily they would be.

Now supposing after the tax inquisitor had presented whatever evidence he had presented in this matter, if he had presented any, the auditor was in doubt how to act and he turned to his legal adviser, to whom would he go? Why to the prosecuting attorney, by the plain provisions of sec. 1274, and now when he should apply to Mr. Stein for advice as to what he should do in the matter, in what position had Mr. Stein placed himself regarding giving him advice?

There were only two ways presented for him to act. One was to say to the auditor frankly, "I have entered into such obligations as will preclude me from giving you such advice as you are entitled to have," or else, notwithstanding his contract with his client to attempt or assume to give the auditor advice. If he had attempted to advise the auditor under circumstances of that kind as the prosecuting attorney, having that retainer in his pocket, or the promise of it, we need not but state the situation to show that such a course of conduct would be reprehensible in the view of every person. The only thing that would be left

to him at all to do would be to frankly state to the auditor that he had in fact accepted a retainer which forbade him giving the advice which he sought.

And now how would that place him? The law had plainly devolved upon him the duty of advising the county auditor. It was his duty, it was his official duty to do that, he must do it if he performed the duties of his office. He was paid a salary as it appears in this particular case of $400 a year for that and the other duties which he was to perform under this sec. 1274. So that at the very best he had placed himself in such circumstances that he must say to the auditor, "I cannot perform the legal duties devolved upon me by the statute; I cannot be your legal adviser." Now if it happened that by any fortuitous circumstance over which he had no control, he had been placed in a position so that he could not give legal advice to the county auditor, that would be one thing, but whatever may be said of his want of forethought in this matter, and of his acting with no actual thought of impropriety, yet there was and must be the presumption all the while of his having knowledge especially in view of the fact that he was prosecuting attorney, and here was the plain direction of the statute touching his duties as the legal adviser of the county auditor and that it would forbid him to thus place himself in a position where it would be impossible for him to advise the county auditor. He had in fact made just such a voluntary contract upon the consideration mentioned. Doubtless a great deal might be said even when judging of this transaction, by way of excuse or palliation and that these facts might exist and yet not affect the actual manhood of the man in the spring of his intentions and motives, but, at the same time, here are the elements that go into a legal judgment. Here are the facts, here is a knowledge of these facts, here is the law to be applied to them; and the legal conclusion would seem to be inescapable that in thus voluntarily placing himself in such a position either to be obliged to refuse to give advice, or to give advice hampered by this contract, he had been guilty of official misconduct. Not as tax inquisitor. We do not regard this proof or this allegation to be so much against him because afterwards as tax inquisitor he collected 10 per cent. upon some amount that was still left upon the duplicate, but because the situation is presented that I have here detailed.

The court of common pleas found that that was misconduct in office, that it was charged and that it was proven and there is no question about the proof; so now to reverse this judgment is to simply say in the syllabus of a case as the general law of the land, after reciting the facts and circumstances which I have here detailed, "*Held*, that it did not constitute misconduct in office of the prosecuting attorney." I think there would be few lawyers who, upon a careful consideration of these circumstances, would be willing to put their names to a brief containing a paragraph stating that proposition of law.

And if this is so, if this reasoning is correct, if this conclusion is correct, it matters not whether the action of the court of common pleas upon the other three specifications is correct or not. The judgment must have been for Mr. Stein's removal from office.

But I will say as to this railroad matter, the third specification which was stated, I will say frankly for myself, and I think I speak the idea of my associates, I am certain I do, that if it stood upon that alone we would hesitate long before we would act upon that; not but that it seems to be clear when it is studied carefully that Mr. Stein was not entitled to regard this as an addition of property upon which he was entitled to something as tax inquisitor, yet it was presented in such a peculiar form, that, considering the services he was called upon to render and the peculiar nature of the mistake, it might well be that in the hurry of forming conclusions he might honestly regard that as being something he was entitled to. Here is a case where the conclusion is to be drawn from the facts. The law is not so clear and explicit that it can be said that the prosecutor must be presumed to have had the impropriety in his mind when he took the fee, and there is another question in that matter, too, whether or not he was acting as

prosecuting attorney sufficiently to sustain this specification of the charge. Possibly he was; probably he was, and probably it might be clearly shown that he was so acting, or at least that it involved his conduct also as prosecuting attorney when we take a broad view of all his relations to the county, the tax duplicate and the county auditor.

As to the Goosman matter it is said that it does not present the facts which would warrant a removal from office. The fact was the county had claims against several individuals and had asked the prosecuting attorney to take charge of them and collect them. He took this matter and succeeded in collecting quite a little sum, some $65, I believe, and he attempted to collect some of the other matters handed him at the same time—separate and distinct bills against the other parties, and finally he did not succeed in making any other collection and there was some question as to whether he should actually begin suit against the parties. He had asked the commissioners their advice in the matter, and was rather waiting for a while to see what they would say, but they did not make any reply directly, and the other bills were laid aside and finally the matter drifted along and nothing further was done about it. But he took the money and deposited it in a bank to his own credit with his other money—to his private account—and kept it pretty nearly a year. He made no account of it upon the book which the law required him to keep and which if he had kept, his attention would necessarily have been called to this item and his duty to deposit it in the county treasury. He made a memorandum of it in his private note book, and it rather escaped his mind and memory for quite a time, until he happened to be looking for something in the book and found the memorandum. Just when that was does not appear to be very clear, but at least he kept it for nearly a year before he turned it into the treasury. After he had learned the committee were investigating this matter and had discovered this matter, and in fact somebody was indicating something in the nature of a threat of some prosecution, as he himself says a threat that he would have him prosecuted for it criminally, have him sent to the penitentiary for it, he still, under the advice of some of his friends, as he says, kept it from the county treasury, until after the committee had made their report and he then deposited it with the county treasurer and took his receipt.

Well, a considerate humane consideration of this matter might lead one to exculpate him on account of his lack of memory in the matter. It might have drifted beyond his memory at the time, so that, really, there was no intention finally to defraud the county out of it, but he himself does not like to put it wholly on the ground of a want of memory, but rather upon the claim or idea that under the circumstances that I have detailed, there being some other claims against other persons handed to him at the same time, he would have the right to retain this money until he had settled up the whole business and then deposit everything together no matter how long it might take. An idea of that kind, of course, is a delusion, and the trouble of it is, it is a direct violation of the specific terms of the statute. And too, he knew the facts, he knew he had the money; he knew he had not deposited it in the treasury; he must be presumed to have known the specific direction of the statute that he should at once deposit it, and he did not do it. Therefore it cannot be said that the transaction was correct, that it was legal, and if it was not proper and legal conduct. then it was *misconduct*, and if it was misconduct, if it was gross, it came under the terms of the statute. Well, there is no lawyer that would like to see put in a syllabus, that a prosecuting attorney having collected money no matter how much— whether $65, or $10,000 would make no difference in the principle—having collected, at the instance of the county commissioners, money belonging to the county and retained it for nearly a year, making no account of it in any book except a private memorandum book, never reporting it nor specifying it in any report that he did make, and then depositing it at a time when threats were made, that notwithstanding all that, "*Held*, that such conduct was not misconduct in

office." That certainly would be misconduct in office unless it can be said that this was a matter in which he was not acting as prosecuting attorney, but that he was acting in a matter such as any attorney might attend to for the commissioners. It is perhaps true that the county commissioners might have employed a collector and not a lawyer; they might have employed another lawyer to make these collections, but they did not do it. He was the legal adviser of the county commissioners and of the county generally, and he was the general legal guardian of its interests, and if he was the legal adviser of the county he was the attorney of the county, and when he had collected money, although the collection might have been intrusted to another, yet if it was intrusted to him and he did collect it, and it was in his pocket, it was the money of the county in the pocket of the prosecuting attorney, collected by him.

Under these circumstances, whatever may have been the capacity in which he was acting in collecting it, when it got into his possession it was the money of the county and he had it, and he was the prosecuting attorney and the legal adviser of the county and its attorney. He was certainly holding that in his character as prosecuting attorney; that is, it was his legal duty as prosecuting attorney to have turned it into the treasury. I remember a case in Michigan, though not exactly parallel, yet the principle would seem to be analogous, where a county treasurer was prosecuted for certain taxes that he had collected, and it was shown that the taxes were paid before they were legally payable, that the county treasurer could not have enforced the collection of the taxes at the time they were voluntarily paid to him, and the claim in his behalf was made, that therefore having received the money at a time when he could not, as treasurer have enforced their collection, he did not receive it as county treasurer, and was not therefore liable as such for it and that his bondsmen were not liable ; yet the court in that case held that although it was paid under such circumstances that he could not have enforced its collection and no law provided it should be paid at the time, yet that when it was in fact paid, it was the money of the county and he as a county officer and his bondsmen were liable for it. At any rate as to this particular specification, we would not be willing to say that, granting these facts, the court of common pleas was manifestly in error in holding that it justified the order it made.

Now as to the Devlin matter—the 11th specification. It seems that the court of common pleas did not find that the original matter with Mr. Devlin was such as it ought to find was misconduct in the prosecuting attorney. That is, he allowed the force of the testimony to indicate the conclusion that the transaction was substantially as Mr. Stein claimed it to be, and held in his favor as to the tenth. But on the 11th the facts were undisputed, and were testified to by the prosecutor himself, that is, that upon a sufficient consideration, he had entered into a written contract with a tax-payer of the county, that he would not investigate him as to his taxes—his omitted taxes. I think he had not exactly agreed that he would not advise the county auditor regarding that matter at all, but at the same time it will be seen that much that was said regarding the Lockwood matter might be said as to this specification. He had placed himself where he could not very well have candidly advised the county auditor regarding these taxes if the county auditor from any evidence, or from his own motion, was considering as to placing taxes upon the duplicate against Mr. Devlin. To be sure he did not enter into a written contract that he would advise the county auditor not to do it, but simply contracted that he would not investigate it; and at the same time it can well be seen that if the auditor had called upon him for advice touching the matter of investigating Mr. Devlin or putting omitted property on for taxation, under that contract which he had made, he certainly would not have been as free in his advice to the county auditor as the prosecuting attorney ought always to be. If this matter stood alone, the court might well hesitate to found a judgment of removal upon this alone, but it presents questions kindred to those in the other specifications and about the same

considerations apply to it, and we are unable to say that the action of the court of common pleas upon this 11th specification was clearly unauthorized and erroneous.

It is argued by counsel that the prosecuting attorney ought not to be removed from office for the commission of any criminal offense, such as embezzlement or anything of that kind, until he has been indicted and convicted thereof in a criminal prosecution, and I remember that cases in the 11th Ohio, see State v. Chapman, 11, O., 430, and the 95th Penna. State were cited as supporting that sort of a conclusion. But it appears very clear from both these cases that the court did not mean to go to the extent that the counsel here argued. The holding was simply to this effect, that, where an attorney was guilty of general criminal conduct, impropriety of demeanor which amounted to a crime, and a crime which if he committed, he was really unfit to be an attorney, generally, and he ought to be stricken from the rolls; yet where the crime did not touch his particular character as an attorney, but was some outside general offense, as murder, or robbery, or perjury or something of that kind not touching his particular employment as an attorney, that for such a cause as that he ought not to be removed from his office as attorney until he has been indicted, prosecuted and convicted criminally; but those cases hold that if this conduct touches his conduct as an attorney-at-law, particularly, then, that rule does not apply, and, of course, it would not apply.

It can hardly be contended seriously, I think, that in a case involving actually the conduct of an attorney in and about the business of an attorney, if his offense amounted to a crime nothing could be done to disbar him or remove him from office unless he was first actually tried, indicted and convicted criminally of that offense. There are some other provisions of the statute which would require a prosecuting attorney to be removed if he failed in certain duties, and they go upon the idea that if there is a person in public office who is not fulfilling its duties, the public is entitled to another sort of person as an incumbent, and the matter is to be tried by the court and not necessarily to a jury unless the court may, possibly, under general authority refer it to a jury; but prehaps, that would not be proper, at least it would not be necessary.

Therefore, regret it as we may, we find ourselves utterly unable under the rules of procedure in a court of error, to set aside or reverse this judgment, or to set aside the findings upon which it was entered. It will therefore be affirmed at the cost of the plaintiff in error.

*H. L. Peake, Judge George Beis, Theo. Alvord* and *Judge E. M. Colver*, for plaintiff in error.

*E. B. King*, for defendants in error.